# The Juniata Building and Loan Association *versus* Mixell *et ux.*

1. Where a married woman unites with her husband in executing a mortgage on her separate property to secure a loan to her husband which he as a stockholder procured from a building and loan association, it is a valid mortgage on her separate property, and under the Act of 1859 covers the premiums due by him as such stockholder and the fines incurred by reason of his default in the payment of dues.

2. There is nothing either in the letter or spirit of the Act of 1859 that makes it the duty of these associations to inquire for what purpose loans are being obtained by members, or to require any stipulation from the borrower as to the use he shall make of the money, or in any manner to supervise and control its disbursement.

May 16th 1877.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Error to the Court of Common Pleas of *Bedford county* : Of May Term 1877, No. 183.

Scire facias sur mortgage issued by The Juniata Building and Loan Association against Samuel Mixell and Rebecca, his wife.

The association was incorporated by the Court of Common Pleas agreeably to the provisions of the Act of April 12th 1859. On the 7th of August 1873, Mixell and his wife executed the mortgage in suit to the association to secure a loan of $400 to Mixell, who was ·a stockholder. The mortgage was upon the separate property of the wife.

The jury rendered the following special verdict :—

" 1. That the loan for which the mortgage in this case was given was made to defendant, Samuel Mixell, without inquiry by plaintiff as to the purpose for which the funds were to be used, and without stipulation or condition made by plaintiff as to the application by said Mixell of said funds or any part thereof, and were not used for building or buying a house or buying land, and was applied by Mixell to the payment of his debts.

" 2. That on the 7th day of August 1873 defendant, Mixell, received from said plaintiff $390.30, as a loan ; that he subsequently paid said plaintiff $9.70 per month for thirteen months, as dues, premiums and interest; that prior to said loan he had paid on stock $8.00.

" 3. That the value of defendant's stock on March 2d 1875 was $56.60 less $12 due for stock payments.

" 4. That at the time the mortgage herein was executed, in presence of J. A. Mann, J. P., the same was not read to Rebecca Mixell by said justice, and that at said time the husband of said Rebecca Mixell was present, and that no acknowledgment was made by said Rebecca, separate and apart from her husband. That the object of the paper had been explained to her and that she signed the same, without coercion and of her own free will.

" 5. That the land bound by the mortgage, herein, was at the time of making said mortgage, and still is, the separate property of Rebecca Mixell.

" 6. That Rebecca Mixell is not a member of the association, plaintiff, and that they are ignorant in point of law on which side they ought, upon these facts, to find the issue; that if the court upon the whole matter shall be of opinion that the issue is proved for the plaintiff, to find for the plaintiff accordingly, and assess the damages at the sum of $450.38, but if the court are of an opposite opinion, then to find for the plaintiff for the sum of $313.28 as of this date."

The court, Hall, P. J., was of opinion that the association had no right to enforce payment of the premiums and fines, inasmuch that in making the loan, under the circumstances found by the jury the association transcended its powers, as it only had the authority to lend its accumulations to members for the specific purpose " of purchasing or building their own houses," and judgment was therefore entered for the lesser sum found by the jury.

This entry of judgment was the error assigned by the association which took this writ.

In the argument before the Supreme Court the question was also raised whether a married woman can be held as surety for her husband where he is a member of an association such as the plaintiff, and whether the enforcement of the payment of the premiums and fines is lawful as against her under the terms of the Act of 1859.

*D. Stewart Elliott* and *Alexander King*, for plaintiff in error.— As a member of the association, Mixell, who knew its rules, was bound and was its debtor, and as the wife can mortgage her estate to secure her husband's debt she having here become security by her mortgage is liable. It was not the intent of either the Act of Assembly or the charter of this association that the money loaned to a stockholder should be applied only to the particular purpose indicated by the court below. It is not incumbent upon the association to inquire into the object of the borrower or to look to the application of the loan.

*John Mower* and *J. B. Cessna*, contended for the view taken by the court below that the loans of these associations should be confined to the specific purpose "of purchasing or building houses," and that the corporation transcended its powers when it departed from this purpose, which was alone the object of its creation.

Mr. Justice STERRETT delivered the opinion of the court, June 4th 1877.

The mortgage on which the scire facias in this case issued, was executed and acknowledged, in due form, by Mixell and his wife, to secure a loan which he, as a stockholder, procured from the Juniata Building and Loan Association. It cannot be doubted that it was competent for Mrs. Mixell to unite with her husband in executing a valid mortgage on her separate property to secure his debt to the association, and the only question is as to the amount of his indebtedness. If, under the facts found by the jury, he is liable for the amount of the loan, including premiums, fines and interest on premiums, his indebtedness, at the date of the verdict, has been ascertained to be $450.38 ; but, if he is not liable for premiums and fines, it was only $313.28. The difference between these sums is the subject of controversy. The special verdict of the jury finds, *inter alia*, that the loan was made without inquiry by the plaintiff as to the purpose for which the funds were to be used, and without stipulation or condition as to how they were to be expended, and that they were, in fact, applied by Mixell to the payment of his debts.

In view of these facts, the learned judge was of opinion that the association had no right to enforce the payment of the premiums

[Juniata Building and Loan Association v. Mixell.]

and fines; that in making the loan under the circumstances found by the jury, the association transcended its authority and was not entitled to recover any part of the premiums and fines, for the reason that they were usurious, and accordingly he entered judgment for the lesser sum found by the jury. In this we think there was error. The fourth section of the Act of April 12th 1859 makes it the duty of the officers of such associations to offer, at stated times, the money on hand, and loan the same in open meeting to the stockholder who shall bid the highest premium for the preference or priority of loan; and the sixth section declares that no premiums, fines or interest on such premiums shall be deemed usurious, and the same shall be collected as debts of like amount are now by law collected. We have recently held, in Wolbach and Wife v. The Lehigh Building and Loan Association, *ante* 211, that these provisions do not apply to borrowers who are not members of the association, or who are not *sui juris* and incapable of incurring liabilities incident to membership; but, the language of the act is too plain to admit of any doubt that, as between the association and its members, the intention was to legalize the payment of premiums and fines and preserve such loans from the taint of usury. In Selden and Wife v. The Reliable Savings and Building Association, 2 Weekly Notes of Cases 281, it is said that in a scire facias on a mortgage given by a member to the association, "it is no defence to say that the borrower has only received a certain sum; for the difference between that and the face of the mortgage is presumptively the premiums, which the act makes legal." There is nothing either in the letter or the spirit of the act, or in the charter of the plaintiff in error, that makes it the duty of the association to inquire for what purpose loans are being obtained, or to require any stipulation from the borrower as to the use he shall make of the money, or in any manner to supervise or control its disbursement. The first article of its constitution declares that the association shall have such object and exercise such powers as are conferred by the Act of April 12th 1859; and the fourth article makes it the duty of the officers to hold stated meetings, at which the money in the treasury shall be offered for loan, upon the conditions and according to the directions and provisions of the fourth and fifth sections of the same act. It thus appears that the charter authority is co-extensive with the power conferred by the act under which the association was incorporated.

The learned judge is no doubt correct in saying that cases of extreme hardship sometimes arise under the operation of the law governing building and loan associations, but it will perhaps be found that they are generally traceable either to the fault or misfortune of the parties themselves rather than to the law under which the associations are organized. Whether this be so or not, if there

[Juniata Building and Loan Association *v.* Mixell.]

is anything wrong in the law, the legislature must be appealed to for correction of the evil.

> The judgment of the Court of Common Pleas is reversed and judgment is entered, on the special verdict, in favor of the plaintiff for $450.38 and costs, with interest from April 21st 1876, the date of the verdict.